*Pursuant to Indiana Appellate Rule 65(E), the trial court and parties shall not take any action in reliance upon this opinion until it is certified.*



IN THE

# Indiana Supreme Court



FILED

Jun 30 2026, 3:07 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Supreme Court Case No. 25S-CR-14

## State of Indiana
*Appellant*

—v—

## Augustine Armando Gomez Jr.
*Appellee*

---

Argued: October 2, 2025 | Decided: June 30, 2026

Direct Appeal from the Tippecanoe Superior Court
No. 79D01-2310-F5-000214
The Honorable Randy J. Williams, Judge

---

**Opinion by Justice Massa**

Justice Slaughter concurs.
Justice Molter concurs in result.
Chief Justice Rush concurs in result in part and dissents in part with
separate opinion in which Justice Goff joins.

**Massa, Justice.**

Our law is clear: a person with a prior felony conviction may not carry a handgun in Indiana. The prohibition applies whether the prior felony conviction occurred in Indiana or a sister state. If such felons are caught in possession they can be charged with a misdemeanor, or a level 5 felony if their conviction occurred within the last 15 years. Here, a defendant with a recent prior Illinois felony conviction was alleged to have possessed a handgun in Indiana. In reviewing the State's charging information and probable cause affidavit, the trial court applied the wrong section of our reference statute, struck down the statute as being unconstitutional and speculated that our precedent in *State v. Hancock,* 65 N.E.3d 585 (Ind. 2016), was wrongly decided, thereby urging its reconsideration.

Finding *Hancock* inapplicable to the case at hand, we decline the invitation to revisit it. Instead, we apply the correct statutory provision and interpretation to reverse and reinstate the charges.[1]

# Facts and Procedural History

Defendant Augustine Armando Gomez Jr., was arrested for domestic violence in Tippecanoe County. His wife told police at the scene he had a gun in his backpack and a felony conviction in his background. The State charged Gomez with three crimes: Felony Domestic Battery in Count I (not the subject of this appeal), Misdemeanor Unlawful Carrying of a Handgun in Count II (in essence, carrying with a prior felony conviction at any time) and Count III, Felony Unlawful Carrying (carrying with a prior felony conviction within the past 15 years). Counts II and III were specifically alleged as follows.

---

[1] In a companion decision also handed down today, *State v. Jones*, 25S-CR-00015, the same trial court dismissed gun possession charges for a different defendant based on the same incorrect application of our laws. In both cases we reach the same conclusion that applying the correct statutory interpretation means the charges for both defendants are reinstated.

Count II: On or about August 25, 2023, in Tippecanoe County, State of Indiana, Augustine Armando Gomez Jr., did knowingly or intentionally carry a handgun, while being a person convicted of a federal or state offense punishable by a term of imprisonment exceeding one (1) year; All of which is contrary to the form of the statute in such cases made and provided, to wit: I.C. 35-47-2-1.5(b) and I.C. 35-47-2-1.5(e), and against the peace and dignity of the State of Indiana.

App. Vol. II at 15.

Count III: On or about August 25, 2023, in Tippecanoe County, State of Indiana, Augustine Armando Gomez Jr., did knowingly or intentionally carry a handgun while being a person convicted of a federal or state offense punishable by a term of imprisonment exceeding one (1) year, while having a prior felony conviction in the previous fifteen years, to wit: on August 22, 2016, Augustine Gomez was convicted of Aggravated Unlawful Use of a Weapon/Vehicle, a Felony, in the Circuit Court of Cook County, State of Illinois, under cause number 2015CR138920; All of which is contrary to the form of the statute in such cases made and provided, to wit: I.C. 35-47-2-1.5(b) and I.C. 35-47-2-1.5(e)(2)(B), and against the peace and dignity of the State of Indiana.

*Id.* at 16. Moreover, the probable cause affidavit, which can be referenced in assessing whether a defendant has sufficient notice of the crime he must defend, stated: "Affiant is familiar with prior court records which show on August 22, 2016, Augustine Gomez was convicted of Aggravated Unlawful Use of a Weapon/Vehicle, *a Felony*, in the Circuit Court of Cook County, State of Illinois, under cause number 2015CR138920." App. Vol. II at 17 (emphasis added).

Notwithstanding the evident clarity of the charges and affidavit, Gomez moved to dismiss Counts II and III, asserting that the offenses were not sufficiently pled, did not constitute an offense, and were

unconstitutional. Overlooking the explicit reference to the Illinois felony conviction in Count III and the probable cause affidavit supporting both counts, the trial court agreed. Its order stated, Count II is not "sufficiently certain pursuant to Ind. Code 35-34-1-4(a)(4) as the charging information fails to specify an alleged conviction with a penalty exceeding one (1) year imprisonment" and does not constitute an offense. *Id.* at 128. It held the same for Count III. *Id.* at 129. The trial court then engaged in a constitutional analysis of Count III, based on the mistaken premise that Indiana Code section 1-1-2-4 requires the foreign conviction in this case to be "substantially similar" to an Indiana offense, and that that requirement was "unconstitutionally vague pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and Article 4, Section 20 of the Indiana Constitution." *Id.* As a result, the court dismissed Count III, stating "the information relies on an unconstitutional statute." *Id.* All three conclusions were error.

## Standard of Review

"We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion." *A.-H.Y v. State*, 975 N.E.2d 1273, 1276 (Ind. 2012). "'An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.'" *Id.* (quoting *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012)). "A trial court also abuses its discretion when it misinterprets the law." *Id.* (citing *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 800 (Ind. 2011)). Generally, "courts have the inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights." *State v. Davis*, 898 N.E.2d 281, 285 (Ind. 2008) (citation omitted).

This Court reviews constitutional questions de novo. *Horner v. Curry*, 125 N.E.3d 584, 588 (Ind. 2019). However, "we generally avoid addressing constitutional questions if a case can be resolved on other grounds." *Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc.*, 988 N.E.2d 250, 254 (Ind. 2013).

# Discussion and Decision

A trial court may, upon motion of the defendant, dismiss a charging information for a number of statutory reasons, including failure to state facts constituting an offense or failure to state the offense with sufficient certainty. Ind. Code § 35-34-1-4(a)(4)–(5). We first find the trial court abused its discretion in dismissing Counts II and III because the charging information states both offenses with sufficient certainty, and the facts stated constitute offenses in Indiana. We also hold the trial court erred in declaring Indiana Code section 1-1-2-4(b)(3) unconstitutionally vague and, accordingly, dismissing Count III. As Count III does not implicate subsection (b)(3), we do not consider its constitutionality here.

## I. Count II is Sufficiently Certain and Constitutes an Offense

"The purpose of a charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *State v. Katz,* 179 N.E.3d 431, 441 (Ind. 2022) (citation omitted). To sufficiently provide notice, an information "generally need[ ] only contain a statement of the essential facts constituting the offense charged, as well as the statutory citation, the time and place of the commission of the offense, [and] the identity of the victim." *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014) (internal quotation marks omitted), *trans. denied.* While we do require a level of specificity, "[T]he State is not required to include detailed factual allegations in a charging information." *Laney v. State*, 868 N.E.2d 561, 567 (Ind. Ct. App. 2007), *trans. denied*. Moreover, "where a charging [information] may lack appropriate factual detail, additional materials such as the probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges against him." *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010), *trans. denied*. "[S]ince the charging information and probable-cause affidavit are filed together, they should be viewed in tandem to determine if they satisfy the goal of putting the defendant on notice of the crimes with

which [he] is charged." *Woods v. State*, 980 N.E.2d 439, 443 (Ind. Ct. App. 2012); *see also Patterson v. State*, 495 N.E.2d 714, 719 (Ind. 1986). At the end of the day, to satisfy due process, the charging "information [must] enable[] an accused, the court, and the jury to determine the crime for which conviction is sought." *Lampitok v. State*, 817 N.E.2d 630, 636 (Ind. Ct. App. 2004), *trans. denied*.

As our law permits reading the probable cause affidavit together with the charging information, we find no deficiencies. Gomez was sufficiently put on notice of the Illinois felony conviction elemental to the State's charge. *Id.*

In addition to notice requirements, a charging information that fails to state facts that constitute an offense may also be dismissed. The charging information would be considered facially deficient if the factual allegations do not align with the elements of a criminal statute. *Hernandez v. State,* 220 N.E.3d 68, 71 (Ind. Ct. App. 2023). Here, there are no such defects in the charge as alleged because the facts alleged constitute an offense under Indiana Code section 35-47-2-1.5, aligning with the elements therein.

The trial court also dismissed Count II for a failure to state a criminal offense. The standard for determining if the information states an offense is if, taking the facts alleged in the information as true, the information failed to allege the defendant committed a criminal offense. *See State v. Dickens*, 261 N.E.3d 778, 781 (Ind. Ct. App. 2025), *trans. denied*. Even though Count II did not specify the exact Illinois statute under which Gomez was convicted, he was put on notice through the probable cause affidavit. Such an alleged deficiency in the charging information could not have misled Gomez or failed to give him notice of the charge filed against him. *See Gordon v. State*, 645 N.E.2d 25, 27 (Ind. Ct. App. 1995), *trans. denied*.

Gomez was thus provided sufficient notice that he was being charged with a misdemeanor count (and felony count) of unlawful possession with the correct Indiana Code cites, with specific reference to the underlying predicate felony conviction, when and where it was entered, and under what cause number. He was entitled to no more.

## II. Count III is Sufficiently Certain and Constitutes an Offense

The trial court also dismissed Count III because it found the charging information was not "sufficiently certain" and did not state facts that "constitute an offense." On both points, the trial court erred.

Like Count II, we find that Count III is sufficiently certain and constitutes an offense. The charging information names Gomez's Illinois conviction, specifies that it was a felony and includes the conviction date which was within fifteen years of the Indiana offense.

Even though the charging information did not provide an Illinois statutory cite for his prior offense, when read with the probable cause affidavit, we find that Gomez was sufficiently put on notice by reference to the title of his offense, its cause number and date of conviction. The information also states that the Illinois conviction was a "felony," which was punishable by more than one (1) year of imprisonment, the common and statutory definition of the term. *See e.g.*, Ind. Code § 35-50-2-1. Finally, the information alleges that Gomez committed the instant offense "[o]n or about August 24, 2024," and that he was "convicted of an Illinois felony on or about August 22, 2016," App. Vol. II at 16, which was within fifteen years. We cannot find that the charging information for Count III insufficiently identified the basis for the charge. The State has sufficiently put Gomez on notice that the crime he was being charged with was enhanced due to his prior out-of-state felony conviction within the last 15 years. *Lampitok*, 817 N.E.2d at 636.

We also find the charging information states facts that constitute an offense in Indiana. For Count III, the State can charge Gomez with a level 5 felony for unlawful carrying of a handgun under Indiana Code section 35-47-2-1.5(e)(2)(B). Section 35-47-2-1.5 lists persons who may not knowingly or intentionally carry a handgun. The list of persons includes "[a] person convicted of a federal or state offense punishable by a term of imprisonment exceeding one (1) year." Ind. Code § 35-47-2-1.5(b)(1). The section identifies "A person who violates this section commits unlawful carrying of a handgun, a Class A misdemeanor. However, the offense is a

Level 5 felony if the person has been convicted of a felony within fifteen (15) years before the date of the offense." Ind. Code § 35-47-2-1.5(e)(2)(B).

The State appropriately enhanced this charge to a level 5 felony because the information states that Gomez has a prior felony conviction from August 22, 2016, of Aggravated Unlawful Use of a Weapon/Vehicle in Illinois. As this was a prior felony committed within fifteen years of the Indiana offense, Count III survives. The charging information states allegations that align with the elements of a criminal statute; therefore, it is not facially deficient. *Hernandez*, 220 N.E.3d at 71.

For all these reasons, we find the trial court abused its discretion when it dismissed Count III.

## III.   Count III was Incorrectly Dismissed for Constitutional Reasons

As for the constitutional claim, the controversy finds its roots in Title 1 of the Indiana Code, a corner we rarely visit, as the substance of our criminal law is contained in Title 35. We begin by analyzing the relevant statutes then explaining why *Hancock* is not applicable.

### A. The Trial Court Misapplied the Reference Statute

A misapplication of Indiana Code section 1-1-2-4 lies at the heart of this case. Whenever the predicate offense statute makes a reference to a conviction for an Indiana criminal offense, it becomes subject to Indiana Code section 1-1-2-4, "the reference statute." Because the handgun statute, Gomez's predicate offense statute, refers to a prior felony conviction, it is subject to the reference statute. But before we examine the Title 1 provisions, we first summarize the essential elements of the handgun statute at issue.

Gomez was charged under Indiana Code section 35-47-2-1.5, which states in relevant part:

(b) Except as provided in subsections (c) and (d), the following persons may not knowingly or intentionally carry a handgun:

    (1) A person convicted of a federal or state offense punishable by a term of imprisonment exceeding one (1) year.

…

(e) A person who violates this section commits unlawful carrying of a handgun, a Class A misdemeanor. However, the offense is a Level 5 felony if:

    (2) the person:

        (B) has been convicted of a felony within fifteen (15) years before the date of the offense.

Subsection (b) defines the basic elements of the offense, while subsection (e) defines and determines its seriousness. A prior felony conviction is an essential element of the offense requiring little interpretation or construction. But at the outset of the Code, the General Assembly in recent years has also given us section 1-1-2-4, entitled "Reference to a conviction for an Indiana criminal offense." Its dense language reads, in relevant part:

(a) As used in this section, "reference to a conviction for an Indiana criminal offense" means both a specific reference to a conviction for a criminal offense in Indiana (with or without an Indiana Code citation reference) and a general reference to a conviction for a class or type of criminal offense, such as:

    (1) a felony;

    (2) a misdemeanor; . . .

(b) . . . a reference to a conviction for an Indiana criminal offense appearing within the Indiana Code also includes a conviction for any of the following:

    (1) An attempt to commit the offense . . .

    (2) A conspiracy to commit the offense

    (3) A substantially similar offense committed in another jurisdiction … even if the reference to the conviction for the Indiana criminal offense specifically refers to an

> "Indiana conviction" or a conviction "in Indiana" or
> under "Indiana law" or "laws of this state."

This reference statute was adopted in 2020. Since then, our Court has never been asked to review its application—until today. The reference statute provides that references to convictions can either be "general" or "specific." If a statute references a specific Indiana crime, it covers foreign convictions if they are "substantially similar." However, if the statute merely references a general category of crime, no such comparison is necessary.

We read section 1-1-2-4(a)(1) as a section that defines "reference to a conviction for an Indiana criminal offense," which means "both a specific reference to a conviction for a criminal offense in Indiana (with or without an Indiana Code citation reference) and a general reference to a conviction for a class or type of criminal offense."

Subsection (b) begins with "reference to a conviction for an Indiana criminal offense *also* includes a conviction for any of the following." (Emphasis added). As subsection (a)(1) defines "reference to a conviction for an Indiana criminal offense," we read subsection (b)(1), (2) and (3) as an expansion of that definition. We agree with the dissent that subsection (b) expands subsection (a) by broadening the scope of convictions that may satisfy either a specific or general reference to a conviction for an Indiana offense.

Our dissenting colleagues read section 1-1-2-4(a)(1) in a vacuum, but we must remember that the reference statute is an interpretive statute that must be read *with* the predicate offense statute. It does not make sense on its own. The crime is the underlying predicate offense, and the categories listed in subsection (a)(1) apply to out-of-state convictions allowing the legislature to cast a wide net for any statute that refers to a general class or type of criminal offense. When the predicate offense statute only makes a general reference to a conviction for a class or type of criminal offense we only need to read as far as subsection (b).

We see this when applied to Gomez. Here, for Count III, the predicate offense statute is the handgun statute, which allows for a misdemeanor

charge to be enhanced to a level 5 felony if the person "has been convicted of a felony within fifteen (15) years before the date of the offense." Ind. Code § 35-47-2-1.5(e)(2)(B). As the handgun statute only refers to a general type or class of offense, i.e., a "felony," the State need only allege that Gomez has been convicted of a prior felony within 15 years. Unlike our dissenting colleagues, we don't think section 1-1-2-4(b)(3) is implicated *as applied* to Gomez. Subsection (b)(3) would be for defendants charged under a predicate offense statute that makes a reference to a *specific* Indiana offense. Say, for example, a defendant was charged with unlawful possession of a firearm by a domestic batterer, the charging information would refer to a *specific Indiana offense*, domestic battery under Indiana Code section 35-42-2-1.3, as the predicate offense. A foreign conviction for domestic battery would have to be "substantially similar" in order to suffice as a predicate under Indiana Code section 1-1-2-4(b)(3). The law requires an examination of the respective elements in those circumstances.[2]

Subsection (b)(3) is not supposed to be a qualifier that must be applied to *any* reference to a general or specific out-of-state prior conviction, but rather, it exists separately as another way the legislature broadened the meaning of "reference to a conviction for an Indiana criminal offense." Respectfully, we view our dissenting colleagues' interpretation as an inappropriate restriction on who falls under the statute. Under the dissent's interpretation, when applied to the unlawful carry statute, any person with a prior felony from a different state not deemed to be "substantially similar" to one in Indiana could be free to carry a firearm in Indiana without risk of felony conviction. This puts a restriction on the general type or classes of offenses.

---

[2] We read section 1-1-2-4(b)(3) as a recognition that criminals cross state lines, and a legislative determination to nationalize the breadth of prior offenses that subject defendants to harsher punishments when a statute references a specific Indiana crime as a predicate. Subsection (b)(3) incorporates foreign crimes into such statutes, so long as they are "substantially similar."

If, on the other hand (as is the case here), a defendant is charged with unlawful possession of a firearm by *a felon*, a charge which does not make a specific reference to an Indiana crime but rather a general reference to a *category* of crime, a court would read subsection 1-1-2-4(b), see the phrase "reference to a conviction for an Indiana criminal offense," then read the definition from subsection 4(a)(1) and end the analysis there because the handgun statute only refers to a *felony*. Had the trial court done so, it would not have strayed into constitutional scrutiny.

Moreover, out-of-state prior convictions are not bound by subsection (b)(3). The dissent suggests that subsection (b)(3) encapsulates all out-of-state prior convictions. However, in subsection (a)(1), the words "criminal offense in Indiana" only follow the words "specific reference" but not "a general reference" which leads us to believe that general references are not limited to Indiana offenses only and can include out-of-state convictions. Therefore, we reject the dissent's view that all out-of-state convictions *must* fall under subsection (b)(3).

The dissent also draws attention to subsection (c)(2) of the reference statute which excludes an offense described in subsection (b)(3) when the covered reference adds a qualifier "to the offense committed in another jurisdiction." Ind. Code § 1-1-2-4(c)(2). We think the handgun statute adds one such qualifier, by asking whether the felony was committed *within the last 15 years*. The dissent suggests that general and specific references are captured by subsection (b)(3), however, if we follow the dissent's interpretation applying subsection (c)(2) to the handgun statute, the additional 15-year qualifier would in fact exclude felons from subsection (b)(3). By virtue of application, we see how subsection (c)(2) emphasizes that the general assembly intended for subsection (b)(3) to apply only to specific references, not general.

Indiana Code section 1-1-2-4 establishes interpretive rules for references to Indiana offenses throughout the Indiana Criminal Code, particularly addressing how conviction references should be understood following changes to Indiana's criminal code classification system. The statute became effective July 1, 2020, and controls over conflicting provisions elsewhere in the Indiana Code. By defining "reference to a conviction for

an Indiana criminal offense" to include both general and specific offenses, the legislature ensured the statute applies comprehensively across various statutory contexts whenever a criminal conviction has been referenced. We read the statute as an interpretative tool that *must* be read with the predicate offense statute that makes the reference itself.

Our interpretation of the reference statute when applied to the handgun statute is not without support. Multiple states do not require that a person's prior out-of-state felony conviction be "substantially similar" before prohibiting that person from possessing a firearm. For example, under Alabama law, a person may not own or possess a firearm if they have been convicted "in this state or elsewhere of any kind of felony offense within the previous five years," or if they have been convicted "in this state or elsewhere of three or more felony offenses of any kind at any time," among other disqualifications. Ala. Code 1975 § 13A-11-72. The statute does not require that the out-of-state felony be substantially similar to an Alabama felony; any felony conviction, regardless of the jurisdiction or the specific elements of the offense, is sufficient to trigger the prohibition.

Likewise, in Kentucky, a person is guilty of possession of a firearm by a convicted felon if they possess, manufacture, or transport a firearm after having been convicted of a felony "as defined by the laws of the jurisdiction in which he was convicted," in any state or federal court. The statute does not require any comparison of the out-of-state felony to Kentucky law or a finding of substantial similarity. Ky. Rev. Stat. § 527.040.

In Arkansas, the statute prohibits firearm possession by any person who has been "convicted of a felony," and defines "felony" as "any state or federal felony," with certain exceptions for business-related offenses. Ark. Code § 5-73-103. Again, there is no requirement for the out-of-state felony to be substantially similar to an Arkansas felony. The regulation also confirms that no person shall possess a firearm who has been convicted of a felony, without any reference to the similarity of the offense. Ark. Admin. Code 154.00.1-VI-7.

Similarly, in Georgia, any person who has been convicted of a felony by a court of Georgia, any other state, the United States, or any foreign nation is prohibited from receiving, possessing, or transporting a firearm, unless they have been pardoned or granted relief as specified in the statute. Ga. Code Ann. § 16-11-131. The statute does not require that the out-of-state or foreign felony conviction be substantially similar to a Georgia felony. It applies to "any felony" as defined, which includes any offense punishable by imprisonment for a term of one year or more. *Id.* at § -131(a)(1) ("felony means any offense punishable by imprisonment for a term of one year or more and includes conviction by a court-martial under the Uniform Code of Military Justice for an offense which would constitute a felony under the laws of the United States.").

We also find support for our approach from the federal system. The federal prohibition against a person with a prior felony conviction from a state possessing a handgun is codified in 18 U.S.C. § 922(g)(1), which makes it unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess any firearm or ammunition in or affecting commerce. The prohibition extends across states and includes felonies from any state jurisdiction. *Id.*

When we read the dissent's approach as applied to the predicate statute in this case, we find that it narrows the scope of the handgun statute by *requiring* the defendant's out-of-state conviction to be substantially similar to the elements of an Indiana felony. The result of this is that some defendants with out-of-state convictions would not have substantially similar convictions. This would be difficult for any person with an out-of-state conviction to be put on notice on whether they can or cannot carry a firearm in Indiana. It could also result in subjective outcomes depending on whether a trial court judge found the out-of-state felony is substantially similar to an Indiana offense or not.

While some other states do have the "substantially similar" language in their statutes, we see their purpose as broadening the scope. They ensure that if a defendant from another state has a conviction that the home state does not explicitly criminalize, their statutes allow consideration of

whether the home state has one that is substantially similar. When applied, that captures a wider class of defendants, rather than creating a restriction. Under the dissent's interpretation, in order for defendants' prior-out-of-state felony conviction to prevent them from carrying a handgun in Indiana, it *must* be substantially similar to an Indiana felony. We do not identify this as the legislature's intent because section 1-1-2-4 includes an explicit supremacy clause stating that if there is a conflict between a provision in this section and another provision of the Indiana Code, section 1-1-2-4 controls. This demonstrates the legislature's intent to establish the reference statute as the governing authority for interpreting criminal conviction references throughout Indiana law, preventing inconsistent application of conviction-related provisions across different statutory chapters and ensuring uniform treatment of individuals with criminal histories regardless of which specific statute they were charged under.

For all these reasons, we find the State properly enhanced this charge to a level 5 felony because Gomez has a prior felony conviction for Aggravated Unlawful Use of a Weapon/Vehicle in Illinois, entered in 2016. As he was convicted of a felony in another state within fifteen years of his Indiana offense, therefore, he may not carry a handgun in Indiana. The State lawfully charged Gomez under Indiana Code section 35-47-2-1.5(e)(2)(B).

## B. *Hancock* and Firearm Statutes

We now consider the trial court's invitation to reconsider our *Hancock* precedent.

Hoosiers value their constitutional rights to bear arms. Indeed, our State Constitution recognizes the right even more explicitly than the Second Amendment: "The people shall have a right to bear arms, *for the defense of themselves* and the State." Ind. Const. Art. 1, § 32 (emphasis added). At the same time, Indiana has long enforced a public policy of keeping weapons from criminals while protecting the rights of the law-abiding. Various statutes further this aim. For instance, the Serious Violent

Felon law carries significant prison time for those caught with a gun after having been convicted of enumerated violent crimes. *See* Ind. Code. § 35-47-4-5(a) (identifying who qualifies as a "serious violent felon"). As we have seen, Indiana also makes it a misdemeanor to possess a handgun if the possessor was previously convicted of a felony at any time and, in turn, enhances that charge to a felony if the prior conviction occurred within 15 years. Ind. Code § 35-47-2-1.5. The predicate felony convictions subjecting handgun possession to criminal sanction need not have been entered by an Indiana court; convictions from other jurisdictions suffice, as well.[3]

*Hancock* concerned the first of these three gun possession restrictions (the Serious Violent Felon law); the case before us concerns the latter two. In *Hancock*, the defendant was charged with possession of a firearm by a Serious Violent Felon, with the State alleging that Hancock had previously been convicted of burglary in Ohio. Burglary was one of 27 enumerated predicate felonies that could support an SVF charge at the time *Hancock* was decided. The SVF statute at that time specifically allowed the use of foreign predicate convictions if "the elements of the crime for which the conviction was entered [were] substantially similar to the elements" of an Indiana predicate offense. Ind. Code § 35-47-4-5(a) (last effective June 30, 2017).[4] The case thus *required* a comparison of Ohio's burglary statute with Indiana's burglary statute. We examined the two and concluded they were

---

[3] Indiana has a history of regulating firearm possession for those with a criminal record. Prior to the 2022 gun reforms, the state required a license to carry a firearm. Felons were prohibited from obtaining such a license and could be prosecuted for carrying without a license for the last several decades. When the legislature adopted the 2022 "constitutional carry" reforms, they did away with the licensure scheme and allowed individuals to carry without a license but made it a crime for felons to carry. It is now a Class A misdemeanor to knowingly or intentionally carry a handgun if you have been convicted of a federal or state offense punishable by a term of imprisonment exceeding one (1) year and a level 5 felony if you have been convicted of a felony within fifteen years. *See* Ind. Code § 35-47-2-1.5.

[4] This language has since been removed from the SVF statute and now is applied by operation of Indiana Code section 1-1-2-4(b)(3). *See infra* at 9-10.

substantially similar enough for the charge to stand. *Hancock*, 65 N.E.3d at 592.

Importantly, in *Hancock*, no constitutional challenge was brought alleging that "substantially similar" was unconstitutionally vague, though the trial court in the case before us today believes it is and largely relies on that conclusion to dismiss the felony gun charge. In essence, the trial court here engaged in a *Hancock*-like analysis of the predicate foreign felony, searching the Indiana code for "a comparing Indiana statute," found none, App. Vol. II at 129, then declared our law unconstitutional. *Id.*

But the statute in question here operates differently than the old SVF statute and requires no such comparative analysis to find the predicate crime "substantially similar" to one in the Indiana Code, whether that phrase is unconstitutionally vague or not (a question we ultimately avoid, though it provides the basis for our exclusive appellate jurisdiction in this case).[5] The law plainly criminalizes gun possession by felons. Any felons. Regardless of where they were convicted. Regardless of the specifics of their prior crime, other than its felony status. The State here simply and clearly alleges the defendant has a felony conviction in Illinois and that he possessed a handgun in Indiana.

Moreover, at the time *Hancock* was decided, the SVF statute explicitly allowed the use of foreign predicate convictions if they were "substantially similar" to specific Indiana crimes. However, that language no longer appears in the SVF statute. Yet, if we were presented with *Hancock* today, we would reach the same result but by application of the reference statute. Because the SVF statute references *specific* Indiana predicate offenses–including burglary– following our analysis above, we would compare the elements of Ohio's and Indiana's burglary statutes by operation of section 1-1-2-4(b)(3) to see if they are "substantially similar." This is the subsection misapplied by the trial court and the dissent.

---

[5] Under Indiana Appellate Rule 4(A)(1)(b), this Court has mandatory and exclusive jurisdiction over the State's appeal, given the trial court's finding of unconstitutionality.

Because the trial court applied the wrong subsection of the reference statute to trigger an unnecessary constitutional analysis, we need not address its finding of constitutional infirmity nor revisit *Hancock*.

# Conclusion

For all the ink spilled and hours spent arguing this case, the issue and answer boils down to one word and one concept fundamental to our law: notice. Was the defendant given enough notice of what he must defend to satisfy due process? Clearly, he was. And more fundamentally, does the statute itself provide notice to felons that they cannot carry handguns in Indiana?[6] Again, clearly it does, regardless of where those felony convictions were entered. If we are wrong in our interpretation of the relevant statutes, the General Assembly can amend accordingly.

The trial court's order dismissing Counts II and III is reversed. We remand for further proceedings.

Slaughter, J., concurs.
Molter, J., concurs in result.
Rush, C.J., concurs in result in part and dissents in part with separate opinion in which Goff, J., joins.

ATTORNEYS FOR APPELLANT
Theodore E. Rokita
Indiana Attorney General

Jesse R. Drum
Supervising Deputy Attorney General, Criminal Appeals

---

[6] We think it does. Convicted felons are undoubtedly aware they cannot carry a handgun in Indiana. In our companion case decided today, defendant Jones denied possessing a gun when confronted by police, explaining he couldn't have one because he was a **convicted felon**. *See Jones*, 25S-CR-00015, App. Vol. II at 15. In the moment, Jones manifested a clear understanding of the statute different from that of our dissenting colleagues.

Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Shay J. Hughes
Lafayette, Indiana

**Rush, C.J., concurring in result in part and dissenting in part.**

I agree with the lead opinion that Count II may proceed, but I part ways on Count III. Count II alleges Gomez committed unlawful carrying of a handgun as a Class A misdemeanor because he had been convicted of a "**federal or state offense punishable by a term of imprisonment exceeding one (1) year**." Ind. Code § 35-47-2-1.5(b)(1) (emphasis added). Count III alleges he committed that offense as a Level 5 felony because he had been "**convicted of a felony**" within fifteen years. *Id.* § -1.5(e)(2)(B) (emphasis added). The distinct formulations the General Assembly used to define these prior-conviction elements resolve this case.

The Class A misdemeanor's prior-conviction element expressly reaches convictions from Indiana and elsewhere through a broad, punishment-based rule. But the Level 5 felony's prior-conviction element does not. It instead uses the general phrase "a felony," which Indiana Code section 1-1-2-4 (the "Reference Statute") treats as a reference to a conviction for an Indiana criminal offense. When, as here, the State relies on a conviction from another jurisdiction to satisfy that reference, Subsection (b)(3) of the Reference Statute requires the non-Indiana offense to be substantially similar to an Indiana felony.

The lead opinion's contrary analysis departs from this statutory sequence in three ways. First, after recognizing that Subsection (a) of the Reference Statute treats "a felony" as a reference to a conviction for an Indiana criminal offense, the opinion declines to apply Subsection (b)(3)'s rule for convictions from other jurisdictions. Second, it uses a definition of "felony" that is not a "statutory definition of the term," *ante*, at 7, and does not comport with Subsection (b)(3), which expressly controls how to read the term when it appears in the Indiana Code. And third, it collapses the unlawful-carrying statute's two distinct prior-conviction formulations into one. Its notice analysis then compounds those errors by treating notice of Gomez's Illinois conviction as if it were notice of the Indiana felony comparator required by the Reference Statute for Count III.

For these reasons, and those that follow, I concur in the result as to Section I and respectfully dissent from Sections II and III.

# I. The Reference Statute governs whether a conviction from another jurisdiction satisfies a statutory reference to a conviction for an Indiana offense.

The Reference Statute prescribes a three-step sequence that the lead opinion does not follow. Subsection (a) defines the statute's triggering phrase—"reference to a conviction for an Indiana criminal offense"—to include "both" specific references and general references such as "a felony." I.C. § 1-1-2-4(a)(1). Subsection (b) then provides that those references also include, among others, "[a] substantially similar offense committed in another jurisdiction." *Id.* § -4(b)(3). And when Subsection (b)(3) applies, it requires an offense-to-offense comparison.

Applied here, the Class A misdemeanor unlawful-carrying offense charged in Count II does not trigger the Reference Statute because that offense's prior-conviction element uses a punishment-based rule that explicitly applies to both federal and state offenses. But the Level 5 felony charged in Count III does trigger the Reference Statute because that offense's prior-conviction element rests on the general Indiana-offense reference to "a felony." And under Subsection (b)(3), Gomez's Illinois conviction can satisfy that reference only if the underlying Illinois offense is substantially similar to an Indiana felony.

## A. Subsection (a) identifies the references the Reference Statute covers; Subsection (b) specifies the additional convictions those references include.

For years, many Indiana criminal statutes addressed convictions from other jurisdictions piecemeal. For example, a statute defined "violent offense," in part, as "[a] crime under the laws of another jurisdiction" that was "substantially similar to any of" a list of Indiana offenses. I.C. § 11-12-3.7-6(26) (2019). Likewise, a different statute elevated domestic battery from a Class A misdemeanor to a Level 6 felony if the defendant had "a previous, unrelated conviction . . . in any other jurisdiction . . . in which

the elements of the crime for which the conviction was entered" were "substantially similar to the elements" of specified Indiana offenses. I.C. § 35-42-2-1.3(b)(1)(C) (2019).

This statute-by-statute approach changed on July 1, 2020, when Public Law 142-2020 took effect. In that law, the General Assembly removed nearly all the statute-specific "substantially similar" provisions and replaced them with a new, generally applicable rule in the Reference Statute. Pub. L. No. 142-2020, § 2, 2020 Ind. Acts 1310, 1312–13. That statute's first two subsections perform distinct functions.

Subsection (a) defines the statute's triggering phrase: "reference to a conviction for an Indiana criminal offense." I.C. § 1-1-2-4(a). That phrase "means both a specific reference to a conviction for a criminal offense in Indiana . . . and a general reference to a conviction for a class or type of criminal offense," including "a felony." *Id.* § -4(a), (a)(1). So when an Indiana statute refers to a conviction for "a felony," that phrase is not a freestanding label. Under Subsection (a), it is a covered reference—one the Reference Statute treats as a reference to a conviction for an Indiana criminal offense.

Subsection (b) then specifies the additional convictions a covered reference includes. It provides that "a reference to a conviction for an Indiana criminal offense appearing within the Indiana Code also includes" convictions for attempts, conspiracies, and "[a] substantially similar offense committed in another jurisdiction." *Id.* § -4(b), (b)(3). The word "also" confirms that courts cannot stop at Subsection (a) when the State relies on a conviction from another jurisdiction to satisfy a covered reference. For that conviction to count, Subsection (b)(3) requires more than proof that another jurisdiction entered the conviction; the underlying offense itself must be a "substantially similar offense."

The lead opinion, however, divides Subsection (b) in a way the text does not permit. Though the opinion correctly acknowledges that Subsection (b) broadens the convictions that may satisfy covered references, *ante*, at 10, it then confines Subsection (b)(3) to "a predicate offense statute that makes a reference to a *specific* Indiana offense," *id.* at 11. Nothing in the statutory text permits that limitation. As explained

above, Subsection (b) applies to a "reference to a conviction for an Indiana criminal offense," and Subsection (a) defines that phrase to include "both" specific references and general references. I.C. § 1-1-2-4(a), (b). By exempting general references from Subsection (b)(3), the lead opinion gives the same defined phrase one meaning in Subsection (a) and another in Subsection (b). That construction cannot be reconciled with settled principles of statutory interpretation. Indeed, when, as here, a statute's "words are clear and unambiguous, we simply apply their plain meaning." *Calvary Temple Church of Evansville, Inc. v. Kirsch*, 251 N.E.3d 1056, 1059 (Ind. 2025) (quoting *Ind. Right to Life Victory Fund v. Morales*, 217 N.E.3d 517, 524 (Ind. 2023)). Rather than applying the Reference Statute's plain meaning, the lead opinion effectively rewrites it by adding a limitation the General Assembly did not include.

Moreover, the grammatical inference the lead opinion uses to support this limitation misreads the sentence it parses. It reasons that "general references are not limited to Indiana offenses only and can include out-of-state convictions" because the words "criminal offense in Indiana" appear in the specific-reference clause but not in the general-reference clause. *Ante*, at 12. But that reading detaches the clauses from the statutorily defined phrase. Subsection (a) does not define "specific reference" and "general reference" as freestanding terms. It defines one phrase, "reference to a conviction for an Indiana criminal offense," and says that phrase "means both" a specific reference and a general reference. I.C. § 1-1-2-4(a). The word "both" does real work: it ties the general-reference clause to the same defined term. And because that defined term is "reference to a conviction for an Indiana criminal offense," both kinds of references—specific and general—share the same Indiana limitation.

Subsection (c)(2) confirms this reading. It excludes an offense described in Subsection (b)(3) when an Indiana statute "imposes an additional qualifier on the offense committed in another jurisdiction." *Id.* § -4(c)(2). That exclusion thus presupposes Subsection (b)(3) is the provision that brings other-jurisdiction offenses into the analysis. And contrary to the lead opinion's view, the exclusion applies whether the statutory reference is general or specific.

At any rate, the unlawful-carrying statute's fifteen-year phrase is not the kind of qualifier Subsection (c)(2) contemplates. The lead opinion says the unlawful-carrying statute asks "whether the felony was committed *within the last 15 years*," *ante*, at 12, but the relevant provision asks when the person "has been convicted"—not when the felony was committed. More fundamentally, the fifteen-year phrase limits the age of the conviction; it does not add a condition to the offense committed in another jurisdiction. Subsection (c)(2) addresses statutes that qualify the other-jurisdiction offense itself, such as by requiring that offense to be directly or indirectly related to jeopardizing a child's health or safety. *See, e.g.*, I.C. § 12-17.2-3.5-4(a)(1)(C)–(D). The unlawful-carrying statute imposes no comparable condition. It simply requires a felony conviction within fifteen years. Subsection (b)(3) still supplies the rule for determining when a conviction from another jurisdiction qualifies as a conviction for "a felony."

Finally, Subsection (d) confirms, rather than undermines, this reading. It provides that the Reference Statute "controls" if it conflicts with "another provision of the Indiana Code." I.C. § 1-1-2-4(d). The lead opinion relies on this control clause to conclude that the Reference Statute governs "criminal conviction references throughout Indiana law." *Ante*, at 15. That much is correct. But precisely because the Reference Statute controls, courts must apply both Subsection (a)'s definition and Subsection (b)'s rule for convictions from other jurisdictions. Put differently, Subsection (d) makes the whole Reference Statute controlling, not just the portion the lead opinion relies on. Thus, the control clause does not permit courts to apply Subsection (a) while disregarding Subsection (b).

In sum, contrary to the lead opinion's erroneous interpretation, the General Assembly did not fragment the Reference Statute into one rule for specific references to convictions for Indiana offenses and another for general references. It instead created one generally applicable rule governing both specific and general references that appear in the Indiana Code. That matters here because, as I explain next, proper application of the rule shows why the Reference Statute applies to the Level 5 felony

charged in Count III but not to the Class A misdemeanor charged in Count II.

## B. Count II uses a cross-jurisdictional punishment-based prior-conviction rule; Count III uses an Indiana-offense reference that triggers Section 1-1-2-4(b)(3).

The charging information and probable cause affidavit together show that the State relies on Gomez's 2016 Illinois conviction to satisfy the prior-conviction element in each count. Count II alleges that conviction satisfies the Class A misdemeanor's element because Gomez had been "convicted of a federal or state offense punishable by a term of imprisonment exceeding one (1) year." I.C. § 35-47-2-1.5(b)(1). Count III, by contrast, alleges that the same conviction satisfies the Level 5 felony's element because he had been "convicted of a felony within fifteen (15) years before the date of the offense." *Id.* § -1.5(e)(2)(B).

The critical difference is the language the General Assembly chose to define each prior-conviction element. The lead opinion describes the Class A misdemeanor provision as "in essence" prohibiting "carrying with a prior felony conviction," *ante,* at 2; *see also id.* at 16, but that's incorrect; the General Assembly was more precise. It used the phrase "federal or state offense punishable by a term of imprisonment exceeding one (1) year," which expressly reaches convictions from other jurisdictions based on punishment exposure. Because that language supplies its own cross-jurisdictional punishment-based rule, the Class A misdemeanor's prior-conviction element does not contain a "reference to a conviction for an Indiana criminal offense" under the Reference Statute.

The Level 5 felony enhancement, however, is different. For that enhancement, the General Assembly used the phrase "has been convicted of a felony within fifteen (15) years before the date of the offense," which does not refer to federal offenses, offenses from other states, or offenses punishable by a specified term of imprisonment. The element instead uses the general phrase "a felony," which Subsection (a)(1) of the Reference

Statute expressly identifies as a "reference to a conviction for an Indiana criminal offense."

Simply put, the General Assembly's choice of language controls. For the Class A misdemeanor, it used broad, punishment-based language. But for the Level 5 felony enhancement, it chose a prior conviction for "a felony." Had the General Assembly intended the enhancement to reach every recent federal or state offense punishable by more than one year, it knew how to say so.

The unlawful-carrying statute's structure reinforces the distinction. For the Class A misdemeanor's prior-conviction element, the General Assembly excluded offenses "pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices" from crimes "punishable by a term of imprisonment exceeding one (1) year." I.C. § 35-47-2-1.5(a)(8). The Level 5 felony enhancement contains no comparable limitation. That difference confirms that the two prior-conviction elements do not cover the same ground.

In sum, the Class A misdemeanor charged in Count II expressly reaches convictions from other jurisdictions by punishment exposure, but the Level 5 felony enhancement charged in Count III uses the covered Indiana-offense reference to "a felony." Subsection (b)(3) therefore does not apply to Count II's prior-conviction element but does apply to Count III's prior-conviction element. And because Count III relies on Gomez's Illinois conviction, that element can be satisfied only if the Illinois offense is substantially similar to an Indiana felony. I explain why next.

## C. Applying Subsection (b)(3) requires an offense-to-offense comparison; neither punishment exposure nor another jurisdiction's label suffices.

Because the Reference Statute applies to the Level 5 felony charged in Count III, Subsection (b)(3) supplies the rule for determining whether Gomez's Illinois conviction satisfies that offense's prior-conviction

element. And because the covered reference is "a felony," the Illinois offense must be substantially similar to an Indiana felony. The lead opinion disagrees and relies on a definition of "felony," based on punishment exposure, drawn from common usage and definitions of "Level 6 felony conviction" and "felony conviction" that apply within Indiana Code chapter 35-50-2. *See ante*, at 7. The only other apparent alternative would be to use another jurisdiction's felony label. *See id*. at 13. But neither punishment exposure nor labeling works for at least three reasons: Subsection (b)(3) compares offenses, not penalties or labels; the unlawful-carrying statute forecloses a punishment-based reading; and Indiana felony consequences require an Indiana felony comparator.

The Reference Statute's plain text requires an offense-to-offense comparison. Subsection (b)(3) refers to "[a] substantially similar **offense** committed in another jurisdiction." I.C. § 1-1-2-4(b)(3) (emphasis added). The object of comparison is an offense. That word matters. The General Assembly did not choose a substantially similar punishment, classification, or label.

Statutory definitions confirm that reading. "[T]he definitions in Article 35-31.5 apply to all statutes relating to penal offenses," I.C. § 1-1-4-5(a)(30), and the Reference Statute relates to penal offenses because it determines when prior convictions may satisfy elements in criminal statutes. Two definitions in Article 35-31.5 matter here: an "offense" means a "crime," I.C. § 35-31.5-2-215(a); and a "crime" means "a felony or a misdemeanor," *id.* § -75(a). In ordinary legal usage, a person is convicted of a crime, such as battery, burglary, or theft, which Indiana classifies as a felony or a misdemeanor; a person does not commit a felony or misdemeanor in the abstract. Thus, Subsection (b)(3)'s phrase "substantially similar offense" requires comparing the non-Indiana crime of conviction with an Indiana crime. And because the covered reference here is "a felony," the Indiana comparator must be a felony.

The lead opinion's discussion of *State v. Hancock*, 65 N.E.3d 585, 587–92 (Ind. 2016) confirms the point. As the opinion acknowledges, under the current serious-violent-felon statute, an Ohio burglary conviction would be compared with Indiana burglary "by operation of section 1-1-2-4(b)(3)"

to decide whether the offenses are "substantially similar." *Ante*, at 16–17, 16 n.4. That is an offense-to-offense comparison. But the lead opinion then confines that comparison to specific references to Indiana offenses, even though Subsection (b) applies to the same defined phrase that Subsection (a) says includes both specific and general references. *See id.* at 10–12, 17. As explained above, no such limitation appears in the text. And having removed Subsection (b)(3)'s offense-to-offense comparison from general references, the lead opinion relies on the definition of "a felony" from sources outside that provision to apparently decide the term refers to offenses punishable by more than one year of imprisonment. *See id.* at 7.

This punishment-based reading is foreclosed by the text of the unlawful-carrying statute. When the General Assembly intended a conviction from another jurisdiction to qualify based on punishment exposure, it said so by using the phrase "federal or state offense punishable by a term of imprisonment exceeding one (1) year." I.C. § 35-47-2-1.5(b)(1). For the Level 5 felony enhancement, however, it chose different language, requiring that the defendant have been "convicted of a felony." *Id.* § -1.5(e)(2)(B). We presume that difference was deliberate, *see, e.g.*, *State v. Neukam*, 189 N.E.3d 152, 154 (Ind. 2022), and we avoid construing different statutory terms to perform the same function, *see, e.g.*, *Turner v. State*, 253 N.E.3d 526, 536–37 (Ind. 2025). In any event, the unlawful-carrying statute itself confirms the point. As explained in the previous section, the General Assembly excluded certain offenses from the Class A misdemeanor's prior-conviction element but imposed no comparable limitation on the Level 5 felony enhancement. I.C. § 35-47-2-1.5(a)(8), (e)(2)(B).

The only alternative approach—a label-based reading—fares no better. Here, for example, the probable cause affidavit identifies the conviction the State relies on by name, court, and cause number: "Aggravated Unlawful Use of a Weapon/Vehicle, a Felony, in the Circuit Court of Cook County, State of Illinois, under cause number 2015CR138920." Even assuming the relevant Illinois offense is 720 Illinois Compiled Statute 5/24-1.6 (2013), much of the firearms-related conduct covered by that statute, including carrying a handgun without a license, has not been illegal in Indiana since July 1, 2022. *See* Pub. L. No. 175-2022, § 12, 2022 Ind. Acts

2454, 2476 (codified at I.C. § 35-47-2-3(a)). And even before then, carrying a handgun without a license was generally classified as a Class A misdemeanor, not a felony. *See, e.g.*, I.C. § 35-47-2-1(a), (e) (2017).

The problem is not limited to this case. Consider two defendants in Indiana charged with unlawful carrying of a handgun. One has a six-year-old Arizona conviction for causing $10,000 in ordinary property damage, a Class 4 felony in that state. Ariz. Rev. Stat. § 13-1602(A)(1), (B)(1). The other has a three-year-old Maine conviction for kidnapping based on forcibly moving a person a substantial distance to hold that person for ransom, a Class A crime in that state. Me. Rev. Stat. tit. 17-A, §§ 4(1), 301(3). If the convicting jurisdiction's label controls, the Arizona conviction would satisfy the prior-felony-conviction element even though Indiana treats the same conduct as a Class A misdemeanor. I.C. § 35-43-1-2(a)(1). But the Maine conviction would not, even though Indiana treats the same conduct as a Level 2 felony. I.C. § 35-42-3-2(a), (b)(4)(A).

Thus, under a label-based reading, felony liability in Indiana would turn not on Indiana's classification of the prior criminal conduct or even on its relative seriousness, but on the happenstance of the convicting jurisdiction's label. The defendant with the Maine kidnapping conviction would avoid felony liability for carrying a handgun in Indiana, but the defendant with the Arizona property-damage conviction would not. Such a result is untenable.

This disparity is not an anomaly; it is the predictable result of making criminal liability in Indiana depend on how another jurisdiction punishes or classifies an offense. Under the lead opinion's approach, the State could use a defendant's conviction from another jurisdiction to support an Indiana felony enhancement even when the underlying offense does not correspond to any Indiana felony. That result cannot be reconciled with the General Assembly's command that crimes "shall be defined and punishment therefor fixed by statutes of this state and not otherwise." I.C. § 1-1-2-2.

An offense-to-offense comparison avoids these problems. It permits a conviction from another jurisdiction to satisfy the Level 5 felony's prior-felony-conviction element only when the underlying offense corresponds

in substance to an Indiana felony. And by requiring substantial similarity, Subsection (b)(3) ensures that only convictions involving comparable criminal conduct trigger consequences under Indiana law.

The statutes the lead opinion cites from other jurisdictions do not "support" its contrary interpretation of Indiana law. *See ante*, at 13–14. If anything, they show only how other legislatures write broader rules expressly—by reaching convictions entered "elsewhere," by tying felony status to the law of the convicting jurisdiction, or by using punishment-based language such as "a crime punishable by imprisonment for a term exceeding one year." *Id.* Our General Assembly used comparable punishment-based language in the Class A misdemeanor provision but chose different language for the Level 5 felony provision. And when, as here, an Indiana statute uses the phrase "a felony," the Reference Statute governs how convictions from other jurisdictions satisfy that reference. Other states' choices cannot supply language our General Assembly did not enact.

The consequences of the lead opinion's specific-reference limitation would extend beyond "a felony." Subsection (a) of the Reference Statute covers other general references, including "a sex offense" and "a crime of domestic violence," which appear throughout the Indiana Code and increase penalties for several offenses. *See, e.g.*, I.C. §§ 35-42-4-13(c)(2), -46-8.5-1(d)(1)(B). And some of these references are in turn defined by a list of specific offenses. *See, e.g.*, I.C. §§ 11-8-8-4.5(a), -5.2 (together defining "sex offense"). Yet under the lead opinion's approach, even such references couldn't be expanded to include a non-Indiana offense that is substantially similar to one of the listed offenses. Further, offense categories vary by jurisdiction and may change whenever another legislature revises its criminal code. And some jurisdictions do not even classify crimes using Indiana's felony–misdemeanor framework. *See, e.g.*, Me. Rev. Stat. tit. 17-A, § 4(1); N.J. Stat. Ann. § 2C:1-4. Proper application of the Reference Statute avoids this instability.

Moreover, administrability concerns do not justify rewriting the Reference Statute. The lead opinion worries that a substantial-similarity inquiry may make it difficult for people with convictions from other

jurisdictions to know whether they may carry a handgun in Indiana and may produce "subjective outcomes" in trial courts. *Ante*, at 14. But those concerns cannot override the statutory text. *See Neukam*, 189 N.E.3d at 155 ("What counts as law, after all, is a statute's enacted text—text forged by the dual constitutional requirements of bicameralism and presentment—and not what we wish or suppose the legislature intended to enact."). The General Assembly chose a substantial-similarity requirement when the State relies on a conviction from another jurisdiction to satisfy a reference to a conviction for an Indiana criminal offense. We must apply that requirement, not remove it.

Finally, at a minimum, any genuine ambiguity must be resolved in Gomez's favor. The Reference Statute determines whether a prior conviction may increase the seriousness of an Indiana offense. So even if the statute could reasonably be read either to require an offense-to-offense comparison or to permit a broader punishment-based or label-based rule, the rule of lenity requires the narrower construction. *See Fix v. State*, 186 N.E.3d 1134, 1139 (Ind. 2022).

In sum, proper application of the Reference Statute here is straightforward. Because Count II rests on the unlawful-carrying statute's cross-jurisdictional punishment-based rule, Subsection (b)(3) does not apply. But because Count III rests on the unlawful-carrying statute's Indiana-offense reference to "a felony," Subsection (b)(3) does apply. And Gomez's Illinois conviction can satisfy the prior-felony-conviction element only if the Illinois offense is substantially similar to an Indiana felony. The lead opinion's contrary analysis errs by carving general references out of Subsection (b)(3), substituting its own definition of "a felony" in disregard of Subsection (b)(3), and collapsing two distinct prior-conviction formulations into one. It also leaves unclear how other general references to convictions for Indiana criminal offenses can include convictions from other jurisdictions without applying Subsection (b)(3)—an approach that creates new questions with no answers.

I now turn to the Court's conclusions that Counts II and III are sufficiently certain and that the facts alleged in each constitute an offense.

## II. Count II may proceed, but Count III is insufficiently certain as pleaded.

Criminal defendants like Gomez have the right "to clear notice of the charge or charges against which the State summons [them] to defend." *Wright v. State*, 658 N.E.2d 563, 565 (Ind. 1995). Thus, when the State files a charging information, it must provide notice of the offense so the defendant may prepare a defense. *State v. Katz*, 179 N.E.3d 431, 441 (Ind. 2022). To accomplish that purpose, the information must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged," I.C. § 35-34-1-2(e), set forth "the nature and elements of the offense charged in plain and concise language without unnecessary repetition," *id.* § -2(a)(4), and "be of sufficient specificity," Ind. Crim. Rule 2.1.

Consistent with these requirements, a charging information is subject to dismissal if it "does not state the offense with sufficient certainty" or if "[t]he facts stated do not constitute an offense." I.C. § 35-34-1-4(a)(4)–(5). To be sufficiently certain, an information "generally need only contain a statement of the essential facts constituting the offense charged, as well as the statutory citation, the time and place of the commission of the offense, and the identity of the victim." *Katz*, 179 N.E.3d at 441 (citation modified). And the facts stated constitute an offense unless "the information is facially deficient in stating an alleged crime." *Id.* Any uncertainty in a charging information is construed against the State. *See, e.g.*, *A.W. v. State*, 229 N.E.3d 1060, 1070 (Ind. 2024). Relatedly, "[e]very element necessary to constitute an offense must be directly and positively charged, and no presumption will be indulged against the accused." *State v. Rodgers*, 93 N.E. 223, 225 (Ind. 1910).

Under these principles, the trial court abused its discretion in dismissing Count II but not Count III.

Count II is sufficiently certain and states facts constituting the offense. The information alleges Gomez committed a Class A misdemeanor by knowingly or intentionally carrying a handgun while being a person convicted of a federal or state offense punishable by more than one year of

imprisonment. And the probable cause affidavit identifies the Illinois conviction on which the State relies. Because the Class A misdemeanor charged in Count II rests on the statute's cross-jurisdictional punishment-based prior-conviction rule, Subsection (b)(3) does not apply. The charging documents thus provide Gomez with adequate notice of the offense and allege facts constituting it. I therefore agree with the Court that Count II may proceed. *See ante*, at 5–6.

But Count III is different. The prior-felony-conviction element of the Level 5 felony is governed by the Reference Statute because the enhancement uses the covered Indiana-offense reference to "a felony." Thus, Gomez's Illinois conviction may satisfy the prior-felony-conviction element only if the Illinois offense is substantially similar to an Indiana felony. Yet neither the charging information nor the probable cause affidavit identifies any Indiana felony that the State contends is substantially similar to the Illinois offense.

The State need not cite the Reference Statute (though doing so would be best practice) or use talismanic language in the charging documents. But when the State relies on a conviction from another jurisdiction to satisfy a covered reference to a prior felony, the charging documents must identify, or at least make reasonably apparent, the Indiana felony comparator. Identifying the Illinois conviction gives Gomez notice of the conviction the State relies on, but not the Indiana felony comparator that makes the conviction legally sufficient to support Count III. Without that comparator, he cannot know which Indiana felony the State claims is substantially similar. And we should not require him to guess which Indiana felony the State will rely on to satisfy the prior-felony-conviction element. *Cf. State v. Johnson*, 270 N.E.3d 489, 496 (Ind. Ct. App. 2025) (upholding an information that allowed a defendant to infer that his conviction was substantially similar to one of several Indiana offenses involving sex crimes against children), *trans. denied*.

The lead opinion errs by framing the notice inquiry at too high a level of generality. *See ante*, at 7–8. The relevant question is not whether Gomez knew that a prior conviction could affect his ability to carry a handgun. Count II alleges that offense and may proceed. Nor is it whether Count III

identified the title, cause number, date, and jurisdiction of the Illinois conviction. *See id*. at 7. The charging documents did. The dispositive question is whether the charging documents for Count III identified the Indiana felony comparator required to elevate unlawful carrying from a Class A misdemeanor to a Level 5 felony based on Gomez's Illinois conviction. Because that enhancement depends on substantial similarity to an Indiana felony, notice of the Illinois conviction alone is not enough.

That defect is fatal to Count III as pleaded. This conclusion does not address whether the State may seek leave to amend or refile a properly pleaded Count III if procedural rules permit. And the defect is not cured by the lead opinion's observation that the General Assembly may amend the "relevant statutes" if the opinion's interpretation is "wrong." *Id.* at 18. Our role is simply to apply the enacted text, not to broaden the Level 5 felony provision to reach a charge the State did not sufficiently plead.

Ultimately, the consequences of the lead opinion's flawed analysis could extend far beyond this case. It removes Subsection (b)(3)'s substantially-similar-offense requirement from every general prior-conviction reference in the Indiana Code and treats notice of a non-Indiana conviction as notice of the Indiana offense comparator the Reference Statute requires. The opinion's failure to explain how other general references to convictions for Indiana offenses expand to include non-Indiana offenses could also leave the law uncertain. And that uncertainty would risk depriving defendants of constitutionally adequate notice of the criminal consequences of their prior convictions. *See Tiplick v. State*, 43 N.E.3d 1259, 1262 (Ind. 2015). The relevant statutory text does not compel these results; it forecloses them.

For all these reasons, the trial court abused its discretion in dismissing Count II but did not abuse its discretion in dismissing Count III. As pleaded, Count III is insufficiently certain because the charging documents do not identify, or make reasonably apparent, any Indiana felony to which the Illinois offense is allegedly substantially similar. Because Count III is insufficiently certain, there is no need to address whether the facts alleged in that count constitute an offense. And because

this case can be resolved entirely on statutory grounds, the trial court's constitutional ruling should be vacated.

Goff, J., joins.